<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| S.M., | : | **Civil Action No. 20-5687 (SRC)** |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF | : |  |
| SOCIAL SECURITY, | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff S.M. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act").   This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability benefits, alleging disability beginning July 15, 2016.   A hearing was held before ALJ Peter R. Lee (the "ALJ") on February 19, 2019, and the ALJ issued an unfavorable decision on April 9, 2019, finding that Plaintiff had not been disabled during the period in question. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of April 9, 2019, the ALJ found that, at step three, Plaintiff did not meet

or equal any of the Listings.   At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at all levels of exertion, with certain non-exertional limitations, including a limitation to simple, routine tasks.   At step four, the ALJ also found that Plaintiff is unable to perform any past relevant work.   At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.   The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on two grounds, but the Court need only reach the first argument, which succeeds: the residual functional capacity determination at step four is not supported by substantial evidence.

Plaintiff argues generally that the residual functional capacity determination at step four is not supported by substantial evidence.   More specifically, Plaintiff points to the details of the functional assessments made by the state agency reviewing consultants and argues that, while the ALJ stated that he gave their opinions great weight, in reality, he did not do so.   While this is perhaps not well-expressed, this Court agrees that Plaintiff is correct to the extent that the ALJ appears to have cherry-picked the reports of the agency reviewers.   Moreover, as will be explained in the discussion that follows, the ALJ's use of the cherry-picked opinions is in conflict with Third Circuit law, as stated in Hess and Ramirez.   Plaintiff is essentially correct that the details of the functional assessments made by the state agency reviewing consultants are such that this Court cannot conclude that the residual functional capacity determination is

2

supported by substantial evidence.   Nor did the ALJ did sufficiently explain his reasoning to allow this Court to understand it fully and review it meaningfully.

At step four, the ALJ reviewed a great deal of medical evidence in detail.   He then wrote the following, which is his analysis of the expert opinion evidence and explanation of the residual functional capacity determination in its entirety:

> As for opinion evidence, there are no medical opinions that the claimant is disabled.
>
> During the initial level of the claimant's disability determination, the reviewing doctors opined that the claimant was pleasant, relatable, cooperative, able to follow directions, memory functions grossly intact, and able to stay focused during the course of the interview. They opined that the claimant has limitations with respect to being around others and has held jobs over the years, but would be better suited in low-contact work-like environments. They opined that the claimant retains the ability to learn and execute one-step tasks but would require overlearning and closer supervision with multi-step operations to prevent his anxiety from interfering, and that the claimant demonstrated an ability to adapt to appropriate work-like environments as well. (Exhibits 2A, 4A).
>
> On reconsideration, the reviewing doctors affirmed the findings of the reviewing doctors in the initial level in opining that despite moderate limitations in understanding, memory, concentration, persistence, pace, social and adaptive functioning, the claimant would be able to understand, retain, carry out simple instructions; perform routine tasks on sustained basis; be able to perform simple, repetitive tasks in settings with limited social demands. (Exhibits 6A, 8A.)
>
> I accord these opinions rendered by physicians with program knowledge great weight. The opinions of DDS are consistent with the clinical evidence of record, which shows the claimant consistently remained alert and oriented, with intact thought processes. Treatment notes also indicate that the claimant stabilized with medication.
>
> Overall, the record as a whole supported the residual functional capacity detailed above based upon the evidence, the claimant's testimony, and my observations.

(Tr. 23.)   The ALJ formulated Plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all

3

exertional levels but with the following nonexertional limitations: Occasional contact with supervisors and co-workers; no contact with the public: work must be performed in an environment free of fast paced production requirements where productivity is measured at the end of the day and with only occasional changes to essential job functions: able to do only simple and routine tasks.

(Tr. 18.)

Although the ALJ's discussion appears to refer to reports from four agency reviewers, two are duplicates; the record contains one initial report, dated February 6, 2017, from agency reviewer Fred Eisner (no credential stated), and one reconsideration report from agency reviewer Dr. Deborah Carter, dated May 26, 2017.   The initial report found moderate levels of impairment in the following areas of the mental residual functional capacity assessment: the ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   (Tr. 79-80.)   Eisner concluded that Plaintiff's mental residual functional capacity allowed him "to perform the mental demands of unskilled work."   (Tr. 77.)

On reconsideration, as to the four areas of moderate limitation just cited, Dr. Carter found no significant limitations as to the ability to remember locations and work-like procedures or the ability to understand and remember very short and simple instructions.   (Tr. 93.)   Dr. Carter agreed that Plaintiff has moderate limitations as to the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods.   (Tr. 79-80.)   Dr. Carter concluded

that Plaintiff retains the ability "to work at simple jobs."   (Tr. 90.)   Dr. Carter added this

summary:

> SUMMARY- despite moderate limitations in understanding, memory,
> concentration, persistence, pace, social and adaptive functioning, the claimant
> would be able to understand, retain, carry out simple instructions; perform routine
> tasks on sustained basis, able to perform simple, repetitive tasks in settings with
> limited social demands.

(Tr. 95.)

Briefly, there are several problems with the ALJ's use of the opinions of the agency

reviewers.   The ALJ's statement that the reconsideration reviewing doctor[1] affirmed the

findings of the initial reviewer is not supported by the evidence and is clearly in error.   In fact,

the evidence of record shows that the reviewers arrived at very different conclusions.   The initial

reviewer – despite finding more areas of moderate impairment – concluded that Plaintiff's

mental residual functional capacity allowed him "to perform the mental demands of unskilled

work."   (Tr. 77.)   On reconsideration, Dr. Carter concluded that Plaintiff had fewer areas of

moderate impairment but retained the ability "to work at simple jobs."   (Tr. 90.)   The ALJ's

statement that the reconsideration reviewer affirmed the initial reviewer's finding that Plaintiff

retains the residual functional capacity to work at simple jobs is incorrect and overlooks the

differences.   Dr. Carter said this and Eisner, despite finding a moderate limitation of the ability

to understand and remember very short and simple instructions, found that Plaintiff could

perform all unskilled work.[2]   Plaintiff is correct that the ALJ gave great weight only to Dr.

---

[1] The ALJ's decision refers to reviewers in the plural at each level, although the record indicates
just one reviewer at each level.
[2] The initial reviewer provided no explanation for his conclusion that someone with a moderate

Carter's assessment in summary, and overlooked the parts of the two reviewer opinions that were inconsistent with the conclusion that Plaintiff can work at simple jobs.

Nonetheless, Dr. Carter did opine that, despite Plaintiff's moderate limitations, he could perform simple work.   Neither Dr. Carter nor the ALJ considered or explained the question of how a person with moderate limitations as to the ability to maintain attention and concentration for extended periods, and moderate limitations as to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, can nonetheless be employed at an ordinary simple job with eight-hour days and five-day weeks, such as the photo copy machine operator job that the vocational expert stated Plaintiff could perform.   (Tr. 25.) The Third Circuit addressed this very issue in the Ramirez and Hess cases:

> [T]he government is correct that, as long as the ALJ offers a "valid explanation," a "simple tasks" limitation is permitted after a finding that a claimant has "moderate" difficulties in "concentration, persistence, or pace." That conclusion flows directly from our decision in *Ramirez*.
>
> In *Ramirez*, as Hess notes, we disapproved of a "simple tasks" limitation after an ALJ had found that a claimant suffered from deficiencies in "concentration, persistence, or pace" that arose "often[.]" 372 F.3d at 554-55. We said that "a requirement that a job be limited to one to two step tasks ... does not adequately encompass a finding that [the claimant] 'often' has 'deficiencies in concentration, persistence, or pace[.]'" *Id.* at 554 (citation omitted). We were specifically concerned that such a limitation would "not take into account deficiencies in pace" because "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.*

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019).   The instant case involves the

---

limitation to the ability to remember simple instructions could nonetheless perform all unskilled work.

same basic facts: both reviewers did agree that Plaintiff has a moderate limitation in abilities to maintain concentration and pace, and Dr. Carter concluded, without explanation, that Plaintiff could perform simple jobs.   The ALJ adopted Dr. Carter's conclusion but gave no explanation of his reasoning, contrary to the requirement stated by the Third Circuit in Hess.

Not only is the ALJ's explanation insufficient under Hess, but also under Burnett. An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).   In the present case, the ALJ's decision does not contain sufficient explanation of the reasoning supporting the conclusion that Plaintiff can perform simple jobs despite the limitations in concentration and pace.   This key part of the ALJ's determination at step four is not amenable to meaningful review and must be vacated, pursuant to Burnett v. Commissioner of SSA, 220 F.3d 112, 119 (3d Cir. 2000). The ALJ's statements here are not substantially more informative than the conclusory statements found to be insufficient by the Third Circuit in Burnett: "We agree with Burnett the ALJ's conclusory statement in this case is similarly beyond meaningful judicial review."   Id. at 119. The failure to satisfy the requirements of Burnett by itself requires that the Commissioner's decision be vacated and remanded.

The Court thus finds that there are three problems with the ALJ's residual functional capacity determination at step four.   First, the evidence of record does not provide sufficient support for the ALJ's statements about it for this Court to find that the determination is supported by substantial evidence.   Second, the ALJ's residual functional capacity determination does not meet the requirements of Third Circuit law, as stated in Hess.   Third, a key part of the ALJ's

7

reasoning is conclusory and beyond meaningful judicial review.

The analysis presented constitutes the rationale for the decision to vacate the Commissioner's decision and remand the case for further proceedings.   The Court additionally comments that the problems found were particularly conspicuous in this case because of the significant evidence of record that Plaintiff has had difficulty keeping jobs, which does not appear to have been addressed, much less reconciled, by the ALJ.   Dr. Reznikoff, a consultative examiner, reported some of the employment history, and also documented Plaintiff's "poor attention and concentration skills."[3]   (Tr. 468, 470.)    The Richard Hall Community Center treatment summary, dated February 1, 2017, reported that Plaintiff has not kept a job for longer than three months in recent years.   (Tr. 492.)   Two of Dr. Burns' treatment notes document going through two jobs in four months in 2017.   (Tr. 521-527.)   The ALJ appears to have overlooked this relevant evidence of Plaintiff's history of employment difficulties.

For these reasons, this Court finds that the Commissioner's decision is not supported by substantial evidence.   The Commissioner's decision is vacated and remanded for further proceedings in accordance with this Opinion.


                                        s/ Stanley R. Chesler
                                    STANLEY R. CHESLER, U.S.D.J.

Dated: September 27, 2021

---

[3]  The ALJ presented a detailed summary of Dr. Reznikoff's report but did not mention these. (Tr. 21.)